IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT RUSH**, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil No. **05-587-JPG** |
| ) | |
| **AUSTIN S. RANDOLPH, JR.,**[1] ) | |
| ) | |
| Respondent. ) | |

### REPORT and RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Petitioner Robert Rush was convicted of first degree murder by a Marion County jury on November 9, 1995. Now before the court is his petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

### Procedural History

The following description of the underlying facts is gleaned from the opinion of the Fifth District Appellate Court. The exhibits referred to herein are attached to the response, **Doc. 11**.

Rush was convicted of the murder of Jerome Flagg. Rush and Flagg had a "history" in that "Flagg had previously stabbed the defendant, and there was testimony that on the night Flagg was killed, he had called the defendant a punk." Ex. A, p. 4. Flagg was found dead on a street in Centralia, Illinois, on May 12, 1995. Earlier that evening, he had been drinking in

---

[1] Petitioner is now incarcerated at Illinois River Correctional Center. Austin S. Randolph, Jr., is the warden of that institution, and he is therefore substituted as respondent. See, Doc. 15.

1

Shorty's Bar, as had been defendant. Two witnesses, Natasha Watson and Nicole Graham, had also been in the bar that night. The women left the bar at about 1:15 a.m., and went outside to sit in Graham's car. Rush came out and talked to them  While they were talking, Flagg came out of Shorty's and walked into the adjacent alley. According to Natasha Watson, Rush made a remark about Flagg, pulled out a "large silver gun and cocked it by pulling back the slide." Ex. A, p. 2. Rush then made a statement to the effect that "what he was going to do would hurt worse than what Flagg had done to him." *Id*. Watson testified that Rush said he was going to go back into the bar, but he actually walked into the alley. Watson then heard a shot, followed by four more shots. Nicole Graham's testimony was substantially the same. Graham testified that she was a good friend of defendant's. Ex. A, pp. 2-3.

The state's evidence indicated that Flagg was shot with a semi-automatic .45 caliber weapon, which is cocked by pulling back a slide. Ex. A, p. 3.

In his defense, Rush tried to show that Flagg had been killed by one George Anderson. Anderson and Flagg had a "history of conflict," in that Flagg had fired shots at Anderson, they had been in a knife fight three months before Flagg died, and Anderson had threatened to kill Flagg two months before Flagg died. Ex. A, p.3.

The bartender at Shorty's testified that both Rush and Flagg had been in the bar on the night of Flagg's death, but that Rush had not been inside Shorty's when Flagg left. According to the bartender, Rush returned to the bar about twenty minutes after Flagg left. He further testified that Anderson had not been in Shorty's at any point during that evening. Ex. A, pp. 3-4. A police officer testified that he took a statement from George Anderson, but never considered him a suspect in the murder. Ex. A, p.3.

Rush was found guilty and was sentenced to an extended term of 75 years imprisonment based on the trial judge's finding that his conduct had been exceptionally brutal and heinous. Ex. A, pp. 10-11.

On direct appeal, Rush asserted that (1) the trial court erred in admitting two photographs of the crime scene; (2) the trial court erred in sustaining an objection to his counsel's argument that, if Rush had the resources that the police had, he could have proved that Anderson was the killer; (3) the trial court erred in sustaining an objection to his counsel's argument that witnesses Watson and Graham could have been motivated to lie by their desire to cover up for another person; (4) Rush was denied a fair trial by the prosecutor's statement in closing argument that bringing Anderson into the case was a "despicable act;" (5) Rush was not proven guilty beyond a reasonable doubt because the only evidence linking him to the murder was the testimony of Watson and Graham, who were contradicted by other witnesses; (6) Rush's conduct did not constitute exceptionally brutal or heinous behavior; and (7) the 75 year sentence was excessive. Ex. B.

Rush lost on all issues, and he filed a pro se PLA which raised the following issues: (1) the admission of photographs inflamed the jurors; (2) a fair trial was denied by biased witnesses; (3) counsel was ineffective for not knowing the witnesses that had been subpoenaed by Rush, not conducting an independent investigation, ineffective cross-examination, failure to cross examine, and not supporting a motion for directed verdict; (4) the state presented inconsistent testimony; (5) the extended sentence was invalid; and (6) Rush was not given a psychological evaluation. Ex. D.  Leave to appeal was denied.  Exhibit E.

Rush filed a pro se postconviction petition, in which he raised the following issues: (1) he

was denied an adequate opportunity to retain counsel;  (2) denial of due process when the court refused to provide the jury with Rush's testimony, and admitted prejudicial photographs;  (3) ineffectiveness of appellate counsel in failing to raise the issues contained in the post-conviction petition;  (4) trial counsel was ineffective in failure to file a motion to suppress Rush's statements and in agreeing with the judge and state's attorney that the jury should not be provided with

the transcript of Rush's testimony.  Ex. F.

On appeal from the dismissal of the petition, he raised only the claim that his extended sentence was unconstitutional under *Apprendi v. New Jersey*, **530 U.S. 466, 120 S.Ct. 2348 (2000)**.   Ex. L.  On May 11, 2001, the Appellate Court affirmed the dismissal of the postconviction petition, but reduced his sentence from an extended term to the maximum non-extended term sentence of 60 years imprisonment. Ex. J.

The state filed a PLA, which was denied.  However, the Illinois Supreme Court remanded with instructions to reconsider its judgment in light of *People v. De La Paz*, **204 Ill.2d 426 (2003)**, which held that *Apprendi* is not to be applied retroactively.  Ex. S.  The extended term sentence was reinstated.  Ex. Q.  Rush filed a PLA, Ex. V, which was denied on March 24, 2004.  Ex. W.

Rush also filed a PLA from the May 11, 2001, order affirming the dismissal of his postconviction petition.  Ex. T.  The issues raised were that his due process rights were violated when the trial court failed to suppress oral statements that had not been disclosed in discovery, trial counsel was ineffective in not moving to strike the statements, and appellate counsel were ineffective in failing to raise the issue.  Rush's PLA was denied.  Ex. U.

4

Petitioner filed a second postconviction petition on December 28, 2001. Ex. H. The issues raised were (1) trial counsel was ineffective in not moving to strike his oral statements, and appellate counsel were ineffective in failing to raise the issue; (2) the court erred in dismissing his first post-conviction petition.

The second post-conviction petition was dismissed on February 14, 2002. Ex. I. On appeal, Rush, through appointed counsel, raised claims that (1) under **People v. Boclair, 202 Ill.2d 89, 789 N.E.2d 734 (2002)**, the trial court could not dismiss the successive petition as untimely during the first stage of post-conviction proceedings; and (2) trial counsel was ineffective in failing to move to suppress his oral statements, and appellate counsel was ineffective for failing to raise the issue. Exhibit Y. The Appellate Court granted him leave to add another claim, that he was entitled to "sentencing relief" under **Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004).** The Appellate Court considered the substantive issues, and affirmed. Ex. X.

Rush filed a PLA through appointed counsel, which raised claims that (1) the trial court erred in dismissing the successive petition as untimely; (2) the successive petition raised the gist of a constitutional issue, and (3) the extended sentence was invalid under **Apprendi** and **Blakely**. Ex. BB. Leave to appeal was denied. Ex. CC.

### Grounds for Habeas Relief

The instant habeas petition was filed on August 15, 2005, and asserts the following grounds:

1. Petitioner was denied a fair trial by the admission of "gruesome photographs."

2. Petitioner was denied a fair trial and denied due process when the trial court sustained the state's objection to his closing argument regarding George

Anderson.

3. Petitioner was denied a fair trial and denied due process when the trial court sustained the state's objection to his closing argument that witnesses Graham and Watson had a motive to lie to cover up for George Anderson.

4. Petitioner was denied a fair trial by the prosecutor's argument that bringing George Anderson into the case was a "despicable act."

5. Petitioner was not proven guilty beyond a reasonable doubt because the only evidence linking him to the crime was the testimony of Watson and Graham, and their testimony was inconsistent and contradicted by other witnesses.

6. Petitioner was denied a fair trial and due process when the trial court failed to suppress inculpatory oral statements that were not disclosed during discovery; trial counsel was ineffective in failing to object or move to suppress, and appellate counsel was ineffective in failing to raise the ineffectiveness of trial counsel.

7. The Appellate Court incorrectly decided that *Apprendi* should not be applied retroactively to his case.

## Exhaustion and Procedural Default

Petitioner must clear two procedural hurdles before the Court may reach the merits of his *habeas corpus* petition: exhaustion of remedies and procedural default. **Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir. 1995).** "Before a federal court may grant *habeas* relief to a state prisoner, the prisoner must exhaust his remedies in state court." **O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).** "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.***; see also, 28 U.S.C. § 2254(c).** In *O'Sullivan v. Boerckel*, the Supreme Court of the United States specifically addressed exhaustion under Illinois' two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of

special circumstances, which are not applicable to this case).  ***O'Sullivan*, 526 U.S. at 843-846.**

Petitioner can circumvent this bar to review if he is able to demonstrate cause for his procedural error **and** establish prejudice resulting from that error, i.e., "cause and prejudice." ***Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999)**; and ***Coleman v. Thompson*, 501 U.S. 722, 750 (1991)**.  "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts."  ***Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)**.  In order to demonstrate prejudice, petitioner must show that the violation of his federal rights caused him actual and substantial prejudice.  *Id.*

Rush has cleared the first procedural hurdle, exhaustion.  He has exhausted all available avenues of relief through the Illinois system, in that he is time barred from further pursuing the alleged constitutional errors in a state post-conviction proceeding.  ***See* 725 ILCS 5/122-1(c); see also *O'Sullivan*, 526 U.S. at 844 (holding that repetitive petitions are not required).**

<u>Analysis</u>

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA.  "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  ***Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843, 1849 (2002)**.

**28 U.S. C. §2254(d)** restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established  federal law, as determined by the Supreme Court of the United States" or " a

7

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Habeas is not another round of appellate review. Federal courts do not review state court determinations of state law questions on habeas review. ***Estelle v. McGuire***, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991); ***Bloyer v. Peters***, 5 F.3d 1093, 1098 (7th Cir. 1993).

Rush's first ground is that he was denied a fair trial by the admission of "gruesome photographs." One photograph showed a bullet in a pool of blood, and the other showed the victim's wallet. The victim's body was not visible in either photograph. See, Ex. A, pp. 4-5. The Appellate Court held that the photos were relevant and were not unduly gruesome. *Id*.

"The admissibility of evidence is generally a matter of state law." ***Milone v. Camp***, 22 F.3d 693, 702 (7th Cir. 1994). Unless petitioner can demonstrate that the admission of the photographs violated a specific constitutional right, which he has not done, habeas relief can be granted only where the evidentiary ruling was so prejudicial that it compromised petitioner's due process right to a fundamentally fair trial. ***Howard v. O'Sullivan***, 185 F.3d 721, 723-724 (7th Cir. 1999). This is not such a case. As the Appellate Court noted, the victim's body was not visible in the photographs. The court's conclusion that the pictures were not overly prejudicial is entirely reasonable.

Petitioner's second, third, and fourth grounds cannot be considered because they were not presented as issues of federal constitutional law for one full round of state court consideration. All three points concern closing arguments. Rush raised these points in his direct appeal, but he did not preserve them in his PLA. See, Ex. D. A habeas petitioner must "fairly present" his federal constitutional claim to the state court for one full round of review. ***Verdin v. O'Leary***,

**972 F.2d 1467, 1472-73 (7th Cir. 1992);** *O'Sullivan v. Boerckel***, 526 U.S. 838, 845 (1999)**. In the Illinois system, the claim must be raised to the Appellate Court and also to the Illinois Supreme Court in the petition for leave to appeal. *O'Sullivan***, 526 U.S. at 843-846.** Because the points concerning closing argument were not presented for one full round of state court consideration, they are procedurally defaulted. Rush has not shown any legally sufficient cause for the default. The points cannot be considered.

Rush's fifth ground is that he was not proven guilty beyond a reasonable doubt. This claim was considered on direct appeal. The Appellate Court cited to a state case which relied on the relevant federal precedent, *Jackson v. Virginia***, 443 U.S. 307, 99 S.Ct. 2781 (1979)**. Under *Jackson,* "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson***, 443 U.S. at 318-319, 99 S.Ct. at 2789.** This court does not, however, reweigh the evidence, make credibility determinations, or make a subjective determination of petitioner's guilt or innocence. *Id.*

The issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "an unreasonable application of" Supreme Court precedent. **28 U.S.C. § 2254(d)(1)**. "Avoiding these pitfalls does not require citation of [Supreme Court] cases - indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer***, 537 U.S. 3, 9, 123 S.Ct. 362 (2002) (emphasis in original).**

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by **28 U.S.C. § 2254(d)(1)**. *Jackson v. Frank***, 348 F.3d 658, 661**

**(7th Cir. 2003).** The unreasonable application standard is "a difficult standard to meet." ***Id.*, at 662.** Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." ***Id.*, at 662 (internal citation omitted).**

The Appellate Court pointed out that the state had presented the testimony of Watson and Graham, which supported the theory that Rush shot and killed the victim, while defendant offered his contrary theory that it was Anderson who killed Flagg. The jury resolved the conflicts in the testimony and "chose to believe the state's theory over the defendant's." Ex. A, p. 9. This conclusion is neither contrary to nor an unreasonable application of ***Jackson***.

Rush argues that the evidence was insufficient to convict him because the testimony of Watson and Graham was inconsistent and contradicted by other witnesses who heard gunshots earlier in the evening. This argument is nothing more than an invitation to this court to reweigh the evidence and make its own credibility determinations. However, such a review is far beyond the scope of this court's role in a habeas case. ***Jackson*, 443 U.S. at 318-319, 99 S.Ct. at 2789.**

Petitioner's sixth ground is that he was denied a fair trial by the admission of his inculpatory oral statements that had not been disclosed in discovery. This point was not raised on direct appeal. Rush asserts that trial counsel was ineffective in failing to object to this evidence or move to suppress the statements, and that appellate counsel was ineffective in failing to raise the ineffectiveness of trial counsel. (Respondent calls this argument points six, seven, and eight, but it was presented as one ground in the petition.)

The ineffectiveness of counsel was raised in both of petitioner's postconviction petitions. The issue was analyzed by the Appellate Court in both of it Rule 23 Orders on the first petition,

Ex. J and Q. Rush raised the issue in his petition for leave to appeal from the first decision on his first postconviction petition. Ex. Ex. T. He did not raise it in his PLA from the second decision on his first postconviction petition. Ex. V.

Rush raised the issue of counsel's ineffectiveness again in his second postconviction petition, and in his PLA. Ex. X, BB.

The statements in question were oral statements allegedly made to an Officer Siemer. Siemer testified that Rush told him that he was afraid on the night in question because he didn't have his gun. Siemer's written report evidently said that Rush said he didn't have "a" gun, not "his" gun. In addition, Siemer testified that Rush changed his story about whether he had left the bar, but his written report did not state that Rush changed his story. See, Traverse, Doc. 14, pp. 4-5.

A claim of ineffectiveness of counsel must itself be presented to a state court for consideration before it can be raised in a habeas petition under §2254. Under Illinois law, claims of ineffective assistance of counsel based on facts appearing in the record can be raised on direct appeal, and claims of ineffective assistance of appellate counsel can be raised in a post-conviction petition. **See, *Lemons v. O'Sullivan* 54 F.3d 357,  360 - 361 (7thCir. 1995), and Illinois cases cited in footnote 2.**

The failure of appellate counsel to raise the issue can serve as "cause" for failing to raise trial counsel's ineffectiveness on direct appeal. The failure of appellate counsel must itself be presented for a full round of state court consideration. ***Edwards v. Carpenter*, 529 U.S. 446, 451-425, 120 S.Ct. 1587, 1591 (2000)**. Here, the ineffectiveness of appellate counsel was raised in the postconviction petition and was presented for one full round of review.

Whether counsel was ineffective is governed by ***Strickland v. Washington*, 104 S.Ct. 2052, 2064-65 (1984)**. Again, the issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "an unreasonable application of" Supreme Court precedent.  **28 U.S.C. § 2254(d)(1)**.

The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas, federal courts must honor any "reasonable" state court decision; "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus." ***Holman v. Gilmore*, 126 F.3d 876, 881-882 (7th Cir. 1997)**.

The Fifth District cited and properly applied the principles enunciated in ***Strickland v. Washington*, supra,** in its Rule 23 Orders on the first postconviction petition.  Ex. J & Q.  The *Strickland* analysis is two-pronged; petitioner must demonstrate that counsel's performance was deficient, *and* that the deficient performance prejudiced the defense.  ***Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.**  Here, Appellate Court honed in on the second prong, prejudice.  First noting that the evidence was sufficient to find Rush guilty beyond a reasonable doubt, the court found that Rush had not demonstrated that prior notice of the oral statements would have helped him to discredit the officer's testimony, or would have changed the outcome of the trial.  Ex. Q, p. 8.  Because there was no merit to the underlying point, the court concluded that trial counsel was not ineffective for failing to move to suppress the statements or objecting to their admission, and appellate counsel was not ineffective for failing to challenge trial counsel's performance.  *Id*.

The state court's application of *Strickland* was not unreasonable.  It certainly does not lie outside the boundaries of permissible differences of opinion.  ***Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).**  Trial counsel cross-examined the officer, and the jury was informed that

the statements had not been documented in the officer's report.  **Doc. 14, pp. 4-5.**  Neither of the statements were so prejudicial that they are likely to have changed the outcome of the case.  The state did not attempt to prove that Rush owned a gun, so the suggestion that Rush referred to "his" gun is of little importance.  The state presented the testimony of the bartender and of witnesses Watson and Graham about Rush leaving and re-entering the bar, so the second statement is not likely to have changed the verdict either.  The state court did not commit a clear error in applying *Strickland,* and this point should therefore be denied.

Lastly, Rush argues that the rule of *Apprendi v. New Jersey*, **530 U.S. 466, 120 S. Ct. 2348 (2000)**, should be applied to him.  Petitioner's conviction became final in 1998.  However, *Apprendi* does not apply to convictions that became final before it was decided.  *U.S. v. Flagg*, **481 F.3d 946, 950 (7th Cir. 2007);** *Curtis v. U.S.*, **294 F.3d 841(7th Cir. 2002).**

In his traverse, Rush suggests that he is entitled to have his extended sentence invalidated by the application of *Ring v. Arizona*, **536 U.S. 584, 122 S.Ct. 2428 (2002)**, and/or *U.S. v. Booker*, **543 U.S. 220, 125 S.Ct. 738 (2005)**.  However, neither of those cases applies retroactively.  *McReynolds v. U.S.*, **397 F.3d 479, 480-481 (7th Cir. 2005)**.

Rush also argues that *Blakely v. Washington*, **542 U.S. 296, 124 S.Ct. 2531 (2004)** should be applied to him.  The Appellate Court considered that issue on the second postconviction petition, and determined that *Blakely* does not apply retroactively.  That is a reasonable conclusion.  The Supreme Court has not made *Blakely* retroactive to cases on collateral review.  See, *U.S. v. Ford*, **383 F.3d 567 (7th Cir. 2004);** *Simpson v. U.S.*, **376 F.3d 679 (7th Cir. 2004)**.  Further, in *Schriro v. Summerlin*, **542 U.S. 348, 124 S. Ct. 2519 (2004)**, the Supreme Court held that *Ring* is not to be applied retroactively.  *Ring* held that an

13

aggravating factor that authorizes the death penalty must be found by the jury, and not by the judge; in *Schriro*, the Supreme Court held that *Ring* did not state a new substantive rule or a watershed rule of procedure. **421 U.S. at 353, 355-357; 124 S. Ct. 2523-2526.** If *Ring* does not apply retroactively, it is difficult to see how *Blakely* could.

The court notes that Rush cites ***Burton v. Waddington*, 126 S. Ct. 2352 (2006)(mem.)**, in which the Supreme Court granted cert on the issue of whether Blakely is to be applied retroactively. However, in an opinion dated January 9, 2007, the Supreme Court vacated and remanded with instructions to dismiss for lack of jurisdiction because Burton's habeas petition was a successive petition filed without leave. ***Burton v. Stewart*, 127 S. Ct. 793 (2007).**

In sum, Rush has not demonstrated a constitutional wrong, and he has not advanced a colorable claim of actual innocence. **See,** *Sawyer v. Whitley***, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518 (1992) (miscarriage of justice exception applies to "actual" innocence as compared to "legal" innocence).** He is not entitled to habeas relief.

### Recommendation

This court recommends that Robert Rush's Petition for Writ of Habeas Corpus be denied in all respects.

Objections to this Report and Recommendation must be filed on or before **December 3, 2007.**

**DATE: November 13, 2007.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**